**Louis J. CASSAS, Plaintiff,**

v.

**LENOX HILL HOSPITAL, Defendant.**

**Nos. 91 Civ. 5880(LBS),
97 Civ. 4181(LBS).**

United States District Court,
S.D. New York.

March 18, 1999.

Kenneth Gordon, Gordon, Gordon & Schnupp, P.C., New York City, for plaintiff.

Seyfarth, Shaw, Fairwesther & Geraldson, New York City, for defendant.

## MEMORANDUM AND ORDER

SAND, District Judge.

Plaintiff Louis J. Cassas seeks an award of attorney's fees and disbursements pursuant to § 706(k) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5(k) from Defendant Lenox Hill Hospital. We deny Plaintiff's motion.

## BACKGROUND

Plaintiff was employed as a security guard by Defendant from 1983 until 1989. On September 8, 1989, Defendant fired Plaintiff, alleging that he had been sleeping on the job and had left his post unattended. Plaintiff has contended that he was terminated for reasons of discrimination, including his national origin.

In October 1989, Plaintiff filed a complaint with the New York City Commission on Human Rights (the "Commission"), charging that Defendant had fired him based on his national origin. The Com-mission accepted the complaint on behalf of the United States Equal Employment Opportunity Commission ("EEOC"). This complaint was later amended, in April of 1991, to include a claim of age discrimination.

In August of 1991, Plaintiff brought suit before this Court pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621—not Title VII—in order to preserve his legal rights for purposes of the statute of limitations, which would not have been tolled by the hearing before the Commission. This Court then placed the federal ADEA case on suspense awaiting the resolution of the administrative proceedings.

On December 28, 1993, the Commission issued a Certificate of Probable Cause and referred the matter to the Hearings Division. The Chief Administrative Law Judge Rosemarie Maldonado dismissed Plaintiff's age discrimination claim for untimeliness, but, after completion of discovery, heard the national origin claim on the merits. In a Recommended Decision & Order ("RDO"), dated February 6, 1997, Judge Maldonado concluded that (a) the preponderance of the evidence supported Plaintiff's contention that national origin discrimination was a factor in the decision to terminate Plaintiff's employment; but (b) Defendant would have taken the same action even if no discriminatory animus had existed, given the seriousness of Plaintiff's dereliction of duties. Judge Maldonado found that this "mixed-motive" scenario violated Title 8, Chapter 1 of the Administrative Code of the City of New York (the "Code"). The Judge recommended that Plaintiff be awarded seven thousand and five hundred dollars as compensation for mental anguish, and that Defendant undertake certain actions to ensure Defendant's future compliance with the City's anti-discrimination laws.

In a Decision and Order dated March 26, 1997, the Commission adopted Judge Maldonado's RDO, finding that Defendant

had violated the City's Code. The Commission's decision did not mention Title VII.

On April 9, 1997, the EEOC issued a "Right to Sue Letter," allowing Plaintiff to file a Title VII suit within ninety days of that ruling. On June 6, 1997, Plaintiff filed a new action before this Court alleging discrimination on the basis of national origin in violation of Title VII. Plaintiff then proceeded to file a motion with this Court for permission to file an amended complaint in the first federal action (the ADEA claim) to include the national origin claim contained in the second federal action for the sole purpose of obtaining attorney's fees. In the alternative, Plaintiff sought to consolidate the two federal cases. The Court granted the motion to amend the complaint without making any determination on whether Plaintiff would be able to obtain attorney's fees and costs given the factual and procedural background of the action. The Court also denied Defendant's motion to dismiss the ADEA complaint.

Plaintiff has now moved for an award of attorney's fees and costs, pursuant to § 706(k) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5(k), for the time expended on the action before the City's Commission.

## DISCUSSION

This case illustrates the complexities that can flow from a seemingly straight-forward statute such as Title VII.[1] The

parties have raised numerous interesting issues that this action and its procedural history present. We do not, however, reach all of them because we find that Plaintiff is not eligible for attorney's fees pursuant to Title VII, where Plaintiff prevailed in City proceedings for a violation of the City Code, but would most likely not have been able to prevail under Title VII.

As an initial matter, we note that Plaintiff's moving papers state that Chief Administrative Law Judge Maldonado found Defendant to have violated Title VII in addition to the Code by firing Plaintiff. (*See* Saltiel Aff. at ¶ 6.) Our review of Judge Maldonado's RDO, dated February 6, 1997, does not indicate such a finding. While federal law is cited in the RDO and while the Judge indicates that Plaintiff alleged violations of both the Code and Title VII, the section entitled "Summary of the Proceedings" notes only that "this tribunal finds that [Defendant] violated *the Code* by firing [Plaintiff] based on a mixture of both legitimate and illegitimate motives." *See* RDO at 3 (emphasis added). More importantly, the Commission's Decision and Order dated March 26, 1997, adopting the RDO, makes no mention of Title VII, and decides only that Plaintiff's rights under the Code were violated. Indeed, the City Commission does not have the authority to decide Title VII matters.

The fact that no determination as to Plaintiff's Title VII allegations has been made does not bar Plaintiff from receiving an award of attorney's fees. *See, e.g., New*

---

1. Because Plaintiff has informed the Court that he filed the Title VII action in order to obtain ·attorney's fees, one of the issues this action potentially raises is whether attorney's fees may be awarded under Title VII in an independent action which is not brought to enforce any of the civil rights laws listed in the Act. *See New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723, (1980); *North Carolina Dep't of Transportation v. Crest St. Community Council,* 479 U.S. 6, 107 S.Ct. 336, 93 L.Ed.2d 188 (1986) (holding, in the context of the Civil Rights Attorney Fees Awards Act, that attorney's fees may not be awarded when the action is brought solely to obtain fees). How-

ever, because we decide on other grounds that Plaintiff cannot be awarded attorney's fees, we do not reach this issue. We further note that this Court's previous decision in which we allowed Plaintiff to amend the complaint to include the Title VII claim for attorney's fees was made in the context of a Rule 15(a) motion to amend. *See Cassas v. Lenox Hill Hospital,* No. 91 Civ. 5880, 1997 WL 661140 (S.D.N.Y. October 22, 1997). This previous Memorandum and Order should not be viewed as a determination that a plaintiff may be awarded fees in an independent action that does not seek other enforcement of Title VII.

*York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980). The Supreme Court has determined that, absent special circumstances, a complainant is entitled to receive fees when the complainant is a prevailing party in an administrative or judicial proceeding to which the complainant was referred to under Title VII.[2] *See id.* In so holding, however, the Court stated that "Title VII merely provides a supplemental right to sue in federal court if satisfactory relief is not obtained in state forums," so that a "complainant may proceed in federal court to 'supplement' the state remedy." *See id.* at 67–68, 100 S.Ct. 2024. It is this concept of federal relief as a safety-net when state law fails to provide all that a complainant would be entitled to on a valid federal claim that presents a barrier to Plaintiff's ability to receive attorney's fees in the instant matter.

A fundamental problem in Plaintiff's application for attorney's fees for the time spent in proceedings before the Commission is that, based on the Commission's findings of a mixed-motive termination, it is not clear that Plaintiff would be entitled to any remedies at all under Title VII. Plaintiff was fired in 1989. At that time, mixed-motive cases were decided according to the principles of *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). Under *Price Waterhouse,* where an employee was fired for both legitimate and illegitimate reasons, the employer avoided liability where it could demonstrate that it would have terminated the employee even in the absence of the impermissible factor. *See id.* at 244–45, 109 S.Ct. 1775 (plurality opinion). By enacting § 107(a) of the Civil Rights Act of 1991, (the "1991 Act") codified at 42 U.S.C. § 2000e–2(m), Congress in effect overruled this aspect of *Price Waterhouse.* Under the 1991 Act, a court may still grant declaratory or injunctive relief as well as attorney's fees and costs when an employ-

ee shows that the impermissible factor was a motivating factor for the employment action and the employer shows that it would have taken the same action regardless of the impermissible factor. *See* 42 U.S.C. §§ 2000e–2(m), 2000e–5(g)(2)(B)(i); *see also Tyler v. Bethlehem Steel Corp.,* 958 F.2d 1176, 1181–82 (2d Cir.1992). It is far from clear, however, that Plaintiff would reap the benefits of the 1991 Act had he sought to pursue a Title VII claim in federal court.

The Supreme Court has held that certain sections of the 1991 Act do not apply retroactively. *See Rivers v. Roadway Express, Inc.,* 511 U.S. 298, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994) (holding that § 101 of the 1991 Act does not apply retroactively); *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1522, 128 L.Ed.2d 229 (1994) (holding that § 102 of the 1991 Act does not apply retroactively to cases pending on appeal at the time the 1991 Act was enacted). Several circuit courts have addressed the question of whether the section at issue here, § 107(a), applies retroactively, and have determined that it does not. *See Chenault v. United States Postal Serv.,* 37 F.3d 535 (9th Cir.1994); *Preston v. Commonwealth of Virginia,* 31 F.3d 203 (4th Cir.1994); *Hook v. Ernst & Young,* 28 F.3d 366 (3d Cir.1994).

Given these holdings, it is doubtful that Plaintiff would be able to avail himself of § 107 of the 1991 Act. Thus, in light of the Commission's finding that Defendant would have taken the same employment action against Plaintiff despite the impermissible national origin factor, it is difficult for the Court to consider Plaintiff eligible for attorney's fees under Title VII. In other words, one of the findings made in the very proceedings for which Plaintiff wishes to receive attorney's fees—that Defendant would have fired Plaintiff absent the impermissible factor—makes it very unlikely that Plaintiff could prevail under Title VII, since Plaintiff's case would most

---

**2.** Defendant argues that Plaintiff does not fall under *Gaslight* because he was not "referred" to the Commission by the EEOC, but rather filed his complaint with the Commission and

the Commission accepted the complaint on behalf of the EEOC. Because we decide that Plaintiff is not entitled to fees for separate reasons, we need not reach this issue.

likely fall under *Price Waterhouse,* and not the 1991 Act. Where Plaintiff is unlikely to prevail under Title VII, supplementing the remedies afforded Plaintiff under the City Code with the attorney's fees provisions under Title VII is inappropriate.[3]

In so deciding, the Court has considered the line of cases where attorney's fees have been awarded for a wide-range of "success." *See, e.g., New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980) (holding that Title VII authorized a recovery of fees for work performed before state administrative body where plaintiff, whose Title VII action, apart from the request for attorney's fees, was dismissed because defendant agreed to comply with the state agency's order, had prevailed in state proceedings); *Maher v. Gagne,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980) (upholding an award of attorney's fees under 42 U.S.C. § 1988 where the case was settled by a consent decree); *Bridges v. Eastman Kodak Co.,* 102 F.3d 56 (2d Cir. 1996) (upholding an award of attorney's fees under Title VII where plaintiff had received a favorable judgment on the merits of her Title VII and state law claims but had received no damages for her claim under Title VII); *Sullivan v. Commonwealth of Pennsylvania,* 663 F.2d 443 (3d Cir.1981) (holding that plaintiff could be deemed to have prevailed, for the purposes of attorney's fees, on her Title VII claim where the suit had prodded the union to take her case to arbitration against the employer, where relief was ultimately granted); *Lloyd v. Aviles,* No. 86 Civ. 7202(TPG), 1989 WL 156292 (S.D.N.Y. 1989) (holding that plaintiff who prevailed on state law claims was entitled to attorney's fees under 42 U.S.C. § 1988 where the court only submitted the state claims to the jury because a finding of liability on those claims would inevitably lead to a finding of liability under § 1983).

The instant matter differs from these, and similar, cases in that a finding in the very proceeding for which Plaintiff seeks fees indicates that he would be unable to prevail under Title VII. While a complainant may receive attorney's fees under Title VII even though a judgment has not been entered in favor of the complainant on a Title VII claim due to an intervening factor, e.g., settlement, where significant doubt as to a complainant's ability to ever recover under Title VII exists, it is inappropriate to award attorney's fees pursuant to the Title.

It is settled that if a plaintiff loses his federal civil rights claim on the merits, he cannot be afforded attorney's fees even if he prevails on a related pendent state law claim. *See Bridges,* 102 F.3d at 58. Plaintiff has, of course, not lost on his Title VII claim because Plaintiff has not sought to have the merits of his claim adjudicated in federal court. Nevertheless, the circumstance that the Commission's findings indicate that a barrier to recovery under Title VII exists precludes an award to Plaintiff of Title VII fees.

## CONCLUSION

For the aforementioned reasons, Plaintiff's request for attorney's fees is denied. SO ORDERED.

**3.** We note that it is the more unusual case where the same nucleus of operative fact will give rise to divergent outcomes under Title VII and the corresponding section of the Code. Courts often apply the same legal standards to causes of action based on violations of the Code as they do to Title VII claims, as the language of the discrimination provisions in the Code closely resembles Title VII. *See e.g., Cruz v. Coach Stores Inc.,* 96 Civ. 8099, 1997 WL 598462 *1, n. 1 (S.D.N.Y.1997); *see also Tomka v. Seiler,* 66 F.3d 1295, 1304 n. 4 (2d Cir.1995); *Song v. Ives Laboratories, Inc.,* 957 F.2d 1041, 1048 (2d Cir.1992) (stating that pre–1991, the New York State's Executive Law § 296 and Title VII were so similar as to be nearly identical.) It is possible that an error was made by the Commission in its analysis of Plaintiff's claims, but the decision was never appealed, and this Court has no cause to review the Commission's decision.